## UNITED STATES v. GLOBE INDEMNITY CO.

District Court, S. D. New York.
Nov. 25, 1936.

. Lamar Hardy, U. S. Atty., of New York City (Malcolm Crusius and Francis H. Horan, Asst. U. S. Atty., both of New York City, of counsel), for the United States.

Satterlee & Canfield, of New York City (Barham R. Gary, and F. Morse Hubbard, both of New York City, of counsel), for defendant.

WOOLSEY, District Judge.

I shall very reluctantly direct a verdict for the plaintiff in this case.

I. This is an action brought by the government against the Globe Indemnity Company on a bond executed by that company in the sum of $75,000 as surety to secure disputed income taxes of J. A. Migel, Inc., for its fiscal year beginning December 1, 1918, and ending November 30, 1919.

The principal amount of the tax has all been paid and this suit is brought to recover interest only from November 15, 1920, the date on which the fourth installment payment became due, to wit:

(1) Interest on the sum of $40,000 from the 15th day of November, 1920, to the 24th day of April, 1929, when the said sum was paid.

(2) Interest on the sum of $195.65 from November 15, 1920, to October 5, 1929, when that sum was paid. This amounts to $103.69.

This makes a total amount demanded by the government in this case for unpaid interest on delayed tax payments of $20,356.39.

II. The statement of facts has been agreed, and, so far as here relevant, is as follows:

The plaintiff is a corporation sovereign and body politic.

The defendant, Globe Indemnity Company, is, and at all the times hereinafter mentioned was, a corporation duly organized and existing under the laws of the state of New York, with its principal office and place of business at 150 William street, New York City, in the state and Southern judicial district of New York within the jurisdiction of this court.

J. A. Migel, Inc., on March 1, 1920, and thereafter, was a corporation duly organized and existing under the laws of the state of New Jersey and authorized to engage in business in the state of New York and had offices in the county and state of New York within the jurisdiction of this court.

At the time of the service of the summons and complaint in this action, J. A. Migel, Inc., had ceased its corporate activity, was formally dissolved, and had no funds or property wherewith to satisfy any judgment that might be entered in this ac-

tion and no offices at which or officers upon whom service of process might be made.

This is an action at law founded on contract arising out of the laws of the United States providing for the internal revenue duly authorized by the Attorney General of the United States at the request of the Commissioner of Internal Revenue.

During the fiscal year, December 1, 1918, to November 30, 1919, both inclusive, J. A. Migel, Inc., received income and profits while engaged in business in the city of New York, state of New York, and in the Second United States Internal Revenue Collection District in New York, whereby it became liable to the United States government for income and profits taxes.

On or about March 1, 1920, J. A. Migel, Inc., filed with the collector of internal revenue for the Second United States Internal Revenue Collection District of New York its corporation income and profits tax return for its fiscal year, disclosing a tax due the plaintiff in the amount of $344,724.13, which amount was duly assessed on the March, 1920, list of income tax assessments for the Internal Revenue District as account No. 401080, and then became due and was to be paid in four equal installments on February 15, 1920, May 15, 1920, August 15, 1920, and November 15, 1920.

Prior to November 15, 1920, payments were made as follows: March 1, 1920, $86,181.03; May 17, 1920, $86,181.03; August 23, 1920, $86,181.03; and there remained unpaid and unsatisfied on said assessment $86,181.04.

On November 15, 1920, J. A. Migel, Inc., filed with the collector of internal revenue a claim for the abatement of the full amount of the balance remaining unpaid on said assessment.

On March 12, 1923, J. A. Migel, Inc., as principal, and the defendant, Globe Indemnity Company, as surety, filed with the collector for the Second United States Internal Revenue District of New York, a bond in the amount of $100,000 to stay the collection of said unpaid balance of $86,181.04, pending decision on said claim of J. A. Migel, Inc., for abatement of $86,181.04.

Thereafter the Commissioner of Internal Revenue duly considered the claim in abatement above mentioned, and on December 11, 1926, allowed the same in the amount of $40,351.77, and rejected it in the amount of $45,829.27, of which action he notified J. A. Migel, Inc., by letter of that date sent by mail to its then address, 422 Fourth avenue, New York City, and, thereafter, on or about February 7, 1927, an overassessment of $40,351.77 was duly scheduled, and of the amount originally assessed $45,829.27 remained due, unpaid, and unabated.

On or about February 8, 1927, J. A. Migel, Inc., filed its petition with the United States Board of Tax Appeals for a redetermination of its tax as set forth in the aforesaid notice of December 11, 1926, which petition was duly docketed as J. A. Migel, Incorporation, Petitioner, v. Commissioner of Internal Revenue, Respondent, No. 23891.

While the above cause was so pending, and on April 21, 1927, at the city of New York, in the state and Southern district of New York, J. A. Migel, Inc., as principal, and the defendant, as surety, executed and delivered to the plaintiff at the hands of the aforesaid collector of internal revenue, a bond in the sum of $75,000 to stay the collection of said sum of $45,829.27 pending the decision of the petition by the United States Board of Tax Appeals, and secured in exchange for this bond the release and surrender of the bond hereinbefore referred to, which was in the amount of $100,000.

Induced thereby and in reliance on the above-mentioned bond in the amount of $75,000, the plaintiff accepted the same and released the first bond in the sum of $100,000 and surrendered it to J. A. Migel, Inc., and the Globe Indemnity Company.

Thereafter and on or about September 24, 1929, J. Marvin Haynes, counsel for J. A. Migel, Inc., petitioner, in the appeal before the United States Board of Tax Appeals, and C. N. Charest, general counsel for the Bureau of Internal Revenue, entered into and filed with the United States Board of Tax Appeals, in the matter of the appeal of J. A. Migel, Inc., Petitioner v. Commissioner of Internal Revenue, Respondent, the following stipulation:

"It is agreed and stipulated by and between J. Marvin Haynes, counsel for the petitioner in the above-entitled appeal, and C. N. Charest, General Counsel, Bureau of Internal Revenue, that the following represents the correct tax liability of the

petitioner for the fiscal year ended November 30, 1919:

| "Total tax assessed | $344,724.13 |
|---|---|
| Less: Tax abated (Sch. No. 23819) | 40,351.77 |
| Net tax assessed | $304,372.36 |

| Total tax paid | 298,543.09 |
|---|---|
| Correct tax liability | 298,738.74 |
| Deficiency in payment | 195.65 |
| Unpaid taxes to be abated | 5,633.62 |

"It is further agreed that the Board of Tax Appeals may enter a final order of redetermination in accordance with this stipulation.

"It is understood and agreed that the Commissioner may collect the said deficiency in payment immediately upon the issuance by the Board of its order of redetermination without regard to the restrictions, if any, contained in section 274 (a) of the Revenue Act of 1926 [44 Stat. 55] or section 272(a) of the Revenue Act of 1928 [26 U.S.C.A. § 272 and note]."

On September 30, 1929, the United States Board of Tax Appeals entered its order and decision in said cause as follows:

"On September 24, 1929, the parties to this proceeding filed a written stipulation as to the tax liability of the petitioner for the fiscal year ended November 30, 1919. Upon consideration of the stipulation and in accordance therewith, it is

"Ordered and decided: In respect of the tax liability of the petitioner for the fiscal year ended November 30, 1919, as follows:

| "Correct tax liability | $298,738.74 |
|---|---|
| Total tax paid | 298,543.09 |
| Unpaid portion of correct tax liability | $ 195.65 |
| Total tax assessed (Net) | 304,372.36 |
| Correct tax liability | 298,738.74 |
| Unpaid assessment to be abated | $ 5,633.62." |

On or about April 24, 1929, before the order and decision of the United States Board of Tax Appeals was entered, the taxpayer paid on account of the assessment of its income and profits tax for the fiscal year ended November 30, 1919, $40,000, and on October 5, 1929, after said order and decision was entered it paid $195.65

by check inclosed with a copy of the order of the Board of Tax Appeals and a letter from J. A. Migel, Inc., addressed to the collector of internal revenue of the Second district of New York. This amount constituted the "unpaid portion of correct tax liability" as set forth in said order and decision.

After the payment of said $195.65 by J. A. Migel, Inc., to the collector of internal revenue of the Second district of New York, as aforesaid, J. A. Migel, Inc., requested this defendant to cancel the $75,000 bond.

Thereupon and in consideration of the fact that the United States Board of Tax Appeals had, by its aforementioned final order and decision of September 30, 1929, decreed an abatement of $5,633.62 in the tax previously assessed against J. A. Migel, Inc., by the Commissioner of Internal Revenue, the defendant, on or about December 27, 1929 released one of the checks of J. A. Migel, Inc., No. 26193, in the amount of $7,770, dated April 26, 1929 drawn to the order of the collector of internal revenue at New York, deposited as collateral, but declined and refused to release the remaining collateral consisting of checks of J. A. Migel, Inc., and to cancel the $75,000 bond, unless and until J. A. Migel, Inc., should produce evidence showing that there was no further federal income and profits tax liability for the fiscal year ended November 30, 1919, outstanding against and unpaid by J. A. Migel, Inc.

Thereafter a representative of J. A. Migel, Inc., requested of the collector of internal revenue of the Second district of New York a statement showing whether or not there were any outstanding taxes due and unpaid by J. A. Migel, Inc., and on or about February 25, 1930, the collector of internal revenue for the Second district of New York wrote J. A. Migel, Inc., a letter, a copy of which was annexed to and made a part of the defendant's answer and is hereinafter set forth.

Thereafter J. A. Migel, Inc., exhibited to this defendant the said letter from the collector of internal revenue for the Second district of New York addressed to J. A. Migel, Inc., and referred to in the preceding paragraph, and this defendant, relying upon the statement contained in the letter, which was written by Mr. Frank K. Bowers, then collector of internal revenue for the Second district of New York,

as aforesaid, and believing it to mean that J. A. Migel, Inc., owed no money whatever to this plaintiff or to the Collector of Internal Revenue for income and/or profits taxes for the fiscal year ended November 30, 1919, or for any interest or penalty accrued or unpaid upon such taxes, released, delivered and surrendered unto J. A. Migel, Inc., the entire balance of the collateral deposited with this defendant by J. A. Migel, Inc., at the time of its obtaining the $75,000 bond. This collateral consisted of four certified checks, each dated April 26, 1929, drawn by J. A. Migel, Inc., on the Irving Trust Company, New York, to the order of the collector of internal revenue at New York, the numbers of the checks and their amounts being as follows:

| No. | | |
|---|---|---|
| 26192 | .................. | $6,767 |
| 26194 | .................. | 12,450 |
| 26195 | .................. | 2,063 |
| 26196 | .................. | 950 |
| | | $22,230 |

Thereafter J. A. Migel, Inc., discontinued and wholly ceased its corporate business and activity, was dissolved, and is entirely without funds or property wherewith to respond to any judgment or to satisfy any debt, and it has no offices in the state of New York.

The plaintiff did not make any demand for the payment of any of the alleged interest now claimed in its complaint, either upon the defendant or upon J. A. Migel, Inc., until the expiration of about eighteen months after the entry of the final order and decision of the United States Board of Tax Appeals on or about September 30, 1929; and at the time of the first demand which was made upon J. A. Migel, Inc., namely April 9, 1931, J. A. Migel, Inc., had already gone out of business, had been dissolved, and was financially irresponsible.

On or about June 8, 1931, and at divers other times thereafter, before the commencement of this suit, the plaintiff through its collector of internal revenue, notified the defendant, Globe Indemnity Company, of the order and decision of the United States Board of Tax Appeals and requested payment of the amount of interest accrued.

The defendant, Globe Indemnity Company, has refused to pay this interest and contends that under the orders, decisions,

and facts hereinabove referred to, no such obligation exists.

These agreed facts, the admissions of the answer and certain exhibits offered in evidence at the trial in pursuance of the stipulation of fact, constitute the record herein.

III. The points raised by the defendant are as follows:

A. First, it says that by reason of the stipulation entered into on September 24, 1929, and the subsequent order and decision of the Board of Tax Appeals, the amount of the tax liability other than the amount of $195.65, was compromised and that such compromise of the tax liability should preclude the government from now claiming interest.

I think the answer to that point is found in the provisions of the said stipulation and order.

In the stipulation of September 24, 1929, the agreement was, "that the following represents the correct tax liability of the petitioner for the fiscal year ended November 30th, 1919."

In the order and decision of the Board of Tax Appeals of September 30, 1929, after reciting this stipulation, it said: "Ordered and decided in respect of the tax liability of the petitioner for the fiscal year ended November 30th, 1919. * * *"

It will be noted, therefore, that both in the stipulation and in the order of the Board of Tax Appeals, the tax liability is fixed as of the fiscal year which ended November 30, 1919, and that the question of interest is left at large.

The agreement of September 24, 1929, between counsel for J. A. Migel, Inc., and counsel for the Commissioner of Internal Revenue really was merely that the principal amount of the taxes in dispute, due for the fiscal year of J. A. Migel, Inc., ending November 30, 1919, was $45,829.27, that $40,000 of that amount had already been paid on April 24, 1929, leaving an unpaid balance of $5,829.27, which was to be disposed of by abating the said unpaid balance by the sum of $5,633.62, leaving a deficiency unpaid of $195.65.

Interest was not mentioned, nor, owing to the limitations of the jurisdiction of the Board of Tax Appeals, was it implicitly involved in what was done.

Consequently, I do not think that it can be considered that there was a compromise involving interest, but that the

agreement was merely as a statement of tax liability of J. A. Migel, Inc., as of a previous date, i. e., November 30, 1919.

Furthermore, under the decision of the Botany Worsted Mills v. United States, 278 U.S. 282, 288, 49 S.Ct. 129, 131, 73 L.Ed. 379, the exclusive method of compromising a tax liability is held to have been prescribed by statute, and there is not any proof that there was any agreement herein other than that made between the counsel for the government and the counsel for J. A. Migel, Inc., whilst the appeal was pending in the Board of Tax Appeals. This was not enough to discharge J. A. Migel, Inc., of liability for the interest accrued on its deferred payment of taxes.

█ B. The defendant's next point is that the United States is estopped by the following circumstances:

The stipulation above referred to, made between counsel before the Board of Tax Appeals, was entered into on September 24, 1929, as above noted. The consent order and decision based on that stipulation was entered by the United States Board of Tax Appeals on September 30, 1929.

On October 5th, after that order and decision, J. A. Migel, Inc., paid by its check the sum of $195.65. This check, together with a copy of the consent order by the Board of Tax Appeals was sent by letter from J. A. Migel, Inc., to the collector of internal revenue for the Second district of New York.

After this letter was sent, J. A. Migel, Inc., requested the defendant, Globe Indemnity Company, to cancel the bond, which is the subject-matter of this action. The defendant had secured as collateral for its indemnity from J. A. Migel, Inc., certain certified checks drawn to the order of the collector of internal revenue, which would have been adequate to have paid the disputed taxes without interest, and it refused to surrender these checks or cancel the bond until J. A. Migel, Inc., should produce evidence showing that there was no further federal income and profits tax liability for its fiscal year ending November 30, 1919, outstanding against it.

Thereafter, a representative of J. A. Migel, Inc., asked the collector of internal revenue for the Second district of New York for a statement as to whether or not there was any outstanding taxes due from it, and on or about February 25, 1930, the collector of internal revenue wrote J. A. Migel, Inc., a letter, a copy of which is annexed to the defendant's answer. This letter is dated February 25, 1930, and reads as follows: "This is to certify that there are no unpaid income taxes appearing on the records of this office in your name for the year 1928 and prior years."

Relying on this statement that J. A. Migel, Inc., was free and clear in respect of its income tax and profit tax, the defendant turned over the certified checks which it had as indemnity collateral from J. A. Migel, Inc. That company has now ceased its corporate business and has been dissolved, and there are now no funds wherewith the defendant may be indemnified for the amount of any judgment which may be had in this action against it.

Although interest was not mentioned in the collector's letter, if the collector had been the employee of a private corporation, there would probably be a good estoppel here; but in view of the fact that the collector was an employee of the government, I do not think that the estoppel, though having all the other elements necessary to make it good, can be considered to have been made by a person of such governmental authority as would bind the government and preclude its maintenance in this action.

This inherent weakness in the defendant's estoppel theory occurred to me as soon as the statement of facts was read to me, and I have been much interested to find that, in a somewhat similar situation, the same conclusion as I have reached was reached by Judge Schoonmaker of the Western District of Pennsylvania in the case of United States v. Heinemann Chemical Co. and American Surety Company of New York (D.C.) 15 F.Supp. 365, 366, decided May 25, 1936. Another case supporting my view on this question which involves a state officer and not a collector of internal revenue is the case of People v. Brown, 67 Ill. 435, 438.

█ C. The next point made by the defendant is that the payment of the principal of the tax by J. A. Migel, Inc., and its acceptance by the government extinguished the government's right to claim interest.

I think this would be a question of very considerable difficulty if it had not been definitely settled against the defendant in the case of Girard Trust Company

844

v. United States, 270 U.S. 163, 168, 46 S.Ct. 229, 231, 70 L.Ed. 524.

■ D. The defendant, of course, also raises the point that under the circumstances the bond was discharged by reason of the payment of the principal, of the indebtedness without any payment of interest.

The defeasance clause of the bond is as follows: "Now, therefore, if the United States Board of Tax Appeals, in its final decision, upholds in whole or in part the action of the Commissioner of Internal Revenue and the said J. A. Migel, Inc. pays to the said Frank K. Bowers, Collector of Internal Revenue and/or his successor in office, the said balance of tax and interest thereon, or such amount thereof as may be found to be due by the final decision of the United States Board of Tax Appeals, then this obligation to be null and void; otherwise to be and remain in full force and effect."

The case is somewhat unusual because at the time when the disputed tax became due, namely, on November 15, 1920, the Board of Tax Appeals was not in existence, for it was created only in 1924. It was, however, in existence when the bond was given.

The defendant contends that, inasmuch as there has been, what is referred to in the stipulation of facts, "an order and decision" of the United States Board of Tax Appeals in the case of J. A. Migel, Inc., Petitioner v. Commissioner of Internal Revenue, entered on a stipulation between counsel for the petitioner and counsel for the Commissioner of Internal Revenue, by which the unpaid portion of the correct tax liability was fixed at $195.65, and, inasmuch as this amount has been paid, the defeasance provision of the bond involved in the present case was met and the bond, therefore, was discharged.

I do not agree.

In the first place, it seems to me that it is perfectly obvious that when J. A. Migel, Inc., paid the sum of $195.65, there was still outstanding the question of whether the government demanded interest on that sum, and on the sum of $40,-000 which had been paid to the Commissioner of Internal Revenue after the commencement of the proceeding before the Board of Tax Appeals and before the entry of its decision.

Whatever the document entered or filed on the stipulation in the Board of Tax Appeals proceeding might be called —whether it is called a judgment, order decree or decision—it was not really a "decision" by the Board of Tax Appeals because it did not involve the exercise of the judicial process, but was merely a contract of settlement between the parties to which the Board of Tax Appeals gave its formal approval.

Therefore, it seems to me that the bond was not discharged because, as is common ground, the interest on the deferred payment of taxes was not paid, and, also, because there was not, properly speaking, any "decision" by the Board of Tax Appeals. Thus, neither of the alternatives for the discharge of the bond was satisfied.

It is most unpalatable to me to have to direct a verdict for the government in this case, but I must do so.

Accordingly, I am prepared to hear motions for a directed verdict.

Thereupon the motion of the defendant for a verdict in its favor was denied, and the motion of the plaintiff for a verdict in its favor in the sum of $20,356.39 was granted, and it was ordered that a judgment be entered in that sum in favor of the United States.

On Argument of Motion to Set
Aside the Above Verdict
for Plaintiff.

I deny the motion to set aside the verdict.

I. Having received a letter from counsel for the defendant, Globe Indemnity Company, with a request for reargument of this case, on November 25, 1936, I heard a motion by defendant to set aside the verdict.

This motion was confined by my order wholly to the last point discussed in the memorandum which I had previously prepared but had not yet filed, namely, whether under the facts the condition of the defeasance of the bond had been satisfied and the bond discharged.

II. Perhaps it is necessary shortly to recapitulate the facts:

As noted in the previous memorandum, the first three installments of the tax as reported by the plaintiff on March 1, 1920, were paid, but the fourth installment, which was due on November 15, 1920, was not paid. This amounted to $86,181.04.

In respect of this installment, the plaintiff filed a claim for abatement for the total amount of this fourth installment.

The Commissioner of Internal Revenue allowed an abatement of $40,351.77. Thus there was left unpaid and due in respect of the fourth installment the sum of $45,829.27.

In this situation, J. A. Migel, Inc., on February 8, 1927, filed a petition with the Board of Tax Appeals asking for a redetermination of its tax and claiming that it had been overassessed by the sum of $45,829.27.

After this proceeding before the Board of Tax Appeals had been brought, conversations began between the Commissioner of Internal Revenue and counsel for the petitioner looking to some kind of an adjustment of the tax liability.

On April 21, 1927, a bond in the sum of $75,000 to cover the deficiency in taxes was substituted for a previous bond in the sum of $100,000.

On April 24, 1929, due to negotiations had between counsel for the respective parties, J. A. Migel, Inc., paid the sum of $40,000 without interest on account of the disputed principal of its tax liability of $45,829.27.

This meant that J. A. Migel, Inc., had relinquished its dispute with regard to the principal of its tax to the extent of $40,000 out of the $45,829.27, leaving the principal sum of $5,829.27 still in dispute and the interest still at large.

In this situation and on September 24, 1929, a stipulation was entered into between the general counsel for the Commissioner of Internal Revenue and the counsel for J. A. Migel, Inc., by which a further abatement was allowed to J. A. Migel, Inc., in the sum of $5,633.62, leaving due the government a deficiency in the principal of its tax of $195.65. There was no mention of interest in the stipulation. The question of interest on deferred payment of the tax was, therefore, still left open.

It should now be emphasized that on April 24, 1929, J. A. Migel, Inc., before the decision of the Board of Tax Appeals, had voluntarily paid to the Commissioner of Internal Revenue, the sum of $40,000, without interest, and that on October 5, 1929, after the decision of the Board of Tax Appeals, J. A. Migel, Inc., paid, without interest, the sum of $195.65, the agreed amount of the deficiency.

III. The provisions of the bond, on which this action is brought and which as above noted was filed April 21, 1927, embodied the situation as it existed before the voluntary payment of the $40,000. It read as follows:

"Whereas, the said J. A. Migel, Inc. has been assessed an income and profits tax for the fiscal year ending November 30th, 1919 by the Commissioner of Internal Revenue in the principal sum of Three Hundred Forty-four Thousand Seven Hundred Twenty-four and 13/100 ($344,724.13) Dollars, which tax was reduced by payment of the said J. A. Migel, Inc. to the principal amount of Eighty Six Thousand One Hundred Eighty-one and 04/100 ($86,181.04) Dollars, against which latter amount the said J. A. Migel, Inc. filed its claim in abatement, which claim in abatement has been allowed by the Commissioner of Internal Revenue in the principal amount of Forty Thousand Three Hundred Fifty-one and 77/100 ($40,351.77) Dollars, and denied in the amount of Forty-five Thousand Eight Hundred Twenty-nine and 27/100 ($45,829.27) Dollars, and Whereas, the said J. A. Migel, Inc. has filed its petition with the United States Board of Tax Appeals, appealing from the determination of the Commissioner of Internal Revenue on its said claim in abatement;

"Now, Therefore, if the United States Board of Tax Appeals, in its final decision, upholds in whole or in part the action of the Commissioner of Internal Revenue and the said J. A. Migel, Inc. pays to the said Frank K. Bowers, Collector of Internal Revenue and/or his successor in office, said balance of tax and interest thereon, or such amount thereof as may be found to be due by the final decision of the United States Board of Tax Appeals, then this obligation to be null and void; otherwise to be and remain in full force and effect."

IV. It is obvious that there were alternative bases for the defeasance of this bond:

First, the payment by J. A. Migel, Inc., to the Commissioner of Internal Revenue of the balance of the tax and interest thereon; and

Second, such amount of the balance of the tax and interest as may be found to be due by the final decision of the United States Board of Tax Appeals.

Curiously enough, the two payments made by J. A. Migel, Inc., after this bond was filed come under the two different branches of the conditions of defeasance.

The $40,000 comes under the first branch, and, as it was not a payment of the balance of the tax with interest thereon, it seems to me that it is inescapable that the bond was not voided by the payment of the $40,000, and, consequently, the government can recover the interest on that sum from its due date until it was paid.

With regard to the $195.65, I think the government must also be successful.

I think I was wrong in my view first expressed that the order and decision entered by the Board of Tax Appeals on the stipulation of April 24, 1929, was not a decision because it was entered on consent.

It seems to me that the judicial process consists not only of an inquiry into the facts and the law of a particular case, but that it also involves a question of the court's own jurisdictional competence which must be determined in every case by the court, whatever the agreements between the parties may be.

For example, in a cause wherein a consent order or decree has ever come before me I have always been careful, before signing it, to determine whether I had jurisdiction to sign it, that is, whether there was diversity of citizenship, whether it was a case within some constitutional jurisdiction—admiralty, patent, or copyright—or whether there was some other basis of jurisdiction. In determining this question of jurisdiction I was making a decision because what I did was within the necessary ambit of the judicial process.

It seems to me, therefore, that when the Board of Tax Appeals signed its order and decision on the stipulation in the proceeding between J. A. Migel, Inc., and the Commissioner of Internal Revenue, it was exercising a segment, though not the whole, of its judicial process, and so the order was a decision of the Board because the Board must have decided that it was competent to allow an agreed order and decision holding the tax payer liable for the principal of the tax in the sum of $195.65. Cf. Freeman on Judgments, vol. 2, § 1350, p. 2773, wherein consent judgments and decrees are discussed.

But, as has been pointed out, the question of interest was fixed by statute and the interest runs from its due date until it is paid on every principal amount of tax fixed by the Board of Tax Appeals, Title 26 United States Code, § 292 (26 U. S.C.A. § 292), cf. Standard Portland Cement Company v. Commissioner of Internal Revenue, 80 F.(2d) 585, 587 (C.C.A. 3), unless there be a settlement in respect of such interest. There has not been any such settlement in this case.

Consequently, with great reluctance, I deny the motion to set aside the verdict herein and give an exception to the defendant—for whatever it may be worth—on such denial.