T.C. Memo. 2015-251

UNITED STATES TAX COURT

JUAN M. HERRERA AND SUSANA M. HERRERA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25093-12.                    Filed December 29, 2015.

<u>John Edward Leeper</u>, for petitioners.

<u>Jeffrey D. Heiderscheit</u>, for respondent.

MEMORANDUM OPINION

SWIFT, <u>Judge</u>:  This matter is before us on respondent's motion for summary judgment.  Respondent determined a $48,872 deficiency in petitioners' 2008 Federal income tax and a $9,774 penalty for an underpayment attributable to a substantial understatement of income tax under section 6662(a) and (b)(2).

**[\*2]**   The issues before us on respondent's motion for summary judgment are whether (1) collateral estoppel applies to disallow a claimed $131,342 carryover to 2008 of business bad debt deductions originating in and claimed by petitioners for 2006 and 2007 and (2) whether summary judgment should be rendered to sustain respondent's determination of the penalty for an underpayment attributable to a substantial understatement of income tax under section 6662(a) and (b)(2).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

At the time of filing of their petition, petitioners resided in Texas.

On their filed 2006 and 2007 Federal income tax returns, petitioners claimed business bad debt deductions totaling $497,999.  Thereof, $131,342 was claimed as a carryover on petitioners' 2008 Federal income tax return.

In a prior proceeding in this Court at docket No. 9481-10, petitioners and respondent litigated petitioners' entitlement to the above-claimed business bad debt deductions for 2006 and 2007 and petitioners' liability for a late-filing addition to tax under section 6651(a)(1) for 2007.  In an opinion filed on November 5, 2012, we disallowed petitioners' claimed business bad debt

**[\*3]** deductions for 2006 and 2007 and we sustained the late-filing addition to tax. See Herrera v. Commissioner, T.C. Memo. 2012-308 (Wherry, J.). On November 11, 2013, the U.S. Court of Appeals for the Fifth Circuit in an unpublished opinion affirmed our disallowance of the claimed business bad debt deductions for 2006 and 2007. Herrera v. Commissioner, 544 F. App'x 592 (5th Cir. 2013).

The $497,999 business bad debt deductions that petitioners claimed for 2006 and 2007 related to a $500,000 debt obligation of a consulting company (MTI) owned by Juan M. Herrera (petitioner). In 2006 and 2007 a related limited liability company (HSA), also owned by petitioner, made payments on this debt totaling $497,999.

The Court of Appeals for the Fifth Circuit affirmed a key and controlling finding of the Tax Court as follows:

> Although we agree with * * * [petitioners'] position that HSA's payments were effectively payments of MTI's debt, they have not shown that HSA was legally obligated to pay MTI's debt. Therefore, we agree with the Tax Court's ultimate conclusion that the payments did not give rise to a bad debt deduction.
>
> [Petitioners'] argument ignores a critical difference between the original $300,000 line of credit and the [$500,000] renewed line of credit. It is true that HSA was a co-obligor along with MTI on the original $300,000 line of credit * * * [the bank] extended in 2004. But when * * * [the bank] renewed and increased the line of credit to $500,000, only MTI was designated as the borrower. * * * [Petitioner] personally guaranteed * * * [MTI's] renewed line of credit,

**[\*4]** but he did not do so on behalf of HSA.  Indeed, \* \* \* [petitioners] have not shown how HSA could have been held liable as a guarantor, endorser, indemnitor, or other secondary obligor for the renewed and increased line of credit when it did not sign--and was not even mentioned--in the applicable loan document. \* \* \*

       Moreover, the fact that HSA eventually obtained a loan from \* \* \* [the bank] in its own name to pay off MTI's debt does not change our conclusion.  \* \* \* [Petitioner] may have simply caused HSA to pay off MTI's debt because he was an individual guarantor and because \* \* \* [the bank] looked to him for repayment.  But most importantly, \* \* \* [petitioners] cite no authority showing that under these circumstances HSA's payment of MTI's debt was anything other than voluntary.

Id. at 595-596.

### Discussion

Summary judgment is appropriate where there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Rule 121(b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).

As explained in Gardner v. Commissioner, 145 T.C. __, __ (slip op. at 26) (Aug. 26, 2015),

       [c]ollateral estoppel is an affirmative defense barring a party from relitigating an issue determined against the party in an earlier proceeding, even if the second proceeding differs significantly from the first action.  Black's Law Dictionary 256.  The collateral estoppel doctrine is also known as issue preclusion.  Once an issue of fact or law is "actually and necessarily determined by a court of competent

**[\*5]**  jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979) (quoting <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 326 n.5 (1979). * * * <u>Brotman v. Commissioner</u>, 105 T.C. 141, 148 (1995).

Collateral estoppel applies to a factual issue if the following conditions are satisfied:  (1) the issue in the second proceeding is identical in all respects with the issue decided in the first proceeding; (2) there is a final judgment rendered by a court of competent jurisdiction; (3) the party against which collateral estoppel is asserted is either a party to the prior judgment or the privy of a party to the prior judgment; (4) the parties actually litigated the issue and the resolution of the issue was essential to the prior decision; and (5) the controlling facts and applicable legal rules remain unchanged from those in the prior proceeding.  <u>Id.</u>, 145 T.C. at __ (slip op. at 27); <u>Peck v. Commissioner</u>, 90 T.C. 162, 166-167 (1988), <u>aff'd</u>, 904 F.2d 525 (9th Cir. 1990).

Petitioners dispute application of only the fifth condition above.  With regard thereto, an exception to the application of collateral estoppel will apply where controlling facts have changed or where controlling evidence not available in the first proceeding is submitted in the second proceeding.  <u>Ross v. Commissioner</u>, T.C. Memo. 1988-283 (citing <u>Dean v. Commissioner</u>, 56 T.C. 895, 898 (1971)).

**[\*6]**   Evidence will be considered to have been unavailable in the first proceeding if by exercise of due diligence it could not have been produced.  <u>Fairmont Aluminum Co. v. Commissioner</u>, 22 T.C. 1377, 1383 (1954), <u>aff'd</u>, 222 F.2d 622 (4th Cir. 1955); <u>Sidoran v. Commissioner</u>, T.C. Memo. 1982-197.

Petitioners offer a loan billing statement not introduced at the prior Tax Court proceeding.  The statement is dated June 2006.  Without any further explanation petitioners merely state that the bank statement was "not in evidence" at the trial which occurred in 2010.  Indeed, petitioners seem to acknowledge the billing statement was available to them and could have been offered into evidence at the trial.

The loan billing statement does not reflect any relevant new fact relating to the debt in question.  On the statement MTI is identified clearly as the debtor.  HSA is referenced on the statement only as having the same office address as MTI.

We conclude and hold that the doctrine of collateral estoppel applies with regard to the $131,342 carryover bad debt deduction petitioners claim on their 2008 tax return.  Our Court's prior holding, as affirmed by the Court of Appeals for the Fifth Circuit, is conclusive.

**[\*7]**  Respondent has established that petitioners are liable for the $48,872 tax deficiency for 2008, and petitioners have not raised anything that would justify a trial.  See Rule 121(d).

In his motion, respondent states that because the tax deficiency we sustain against petitioners exceeds the greater of $5,000 or 10% of the tax required to be shown on their 2008 tax return,[1] the understatement of income tax is substantial under section 6662(d), and the section 6662(a) and (b)(2) penalty mathematically and automatically applies.  Accordingly, respondent moves for summary judgment against petitioners on the section 6662(a) and (b)(2) penalty.

On the penalty issue for 2008 and in opposition to respondent's motion for summary judgment thereon petitioners assert a reasonable basis for claiming the carryover bad debt deduction and the resulting understatement of income tax.  See sec. 6662(d)(2)(B)(ii)(II).  Petitioners correctly note that respondent never determined a section 6662 penalty against them relating to the tax deficiencies for 2006 and 2007, even though the facts relating to those claimed bad debt deductions were essentially the same as they are for 2008.  Additionally,

---

[1] 10% of petitioners's total $428,095 income tax liability (as determined by respondent and that we sustain) equals $42,809.

**[\*8]** petitioners note that their 2008 Federal income tax return was filed before the Tax Court's prior opinion was filed on November 5, 2012.

Petitioners argue that respondent's failure to determine section 6662 penalties for 2006 and 2007 establishes, or at the least provides significant support for, the reasonableness of their claim of essentially the same bad debt deductions for 2008.

We will deny respondent's summary judgment motion with regard to the $9,774 section 6662(a) and (b)(2) penalty for 2008.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.